except KELLOGG, P. J., and COCHRANE, J., who dissent, the latter in opinion.

COCHRANE, J. (dissenting). I agree with Mr. Justice WOOD-WARD that chapter 244 of the Laws of 1915 repealed the special acts relative to Rensselaer county and in effect abolished the position held by the relator. But still I am unable to see why he is not within the protection of section 22 of the Civil Service Law, which provides that the honorably discharged soldier, if his position be abolished for any reason, "shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor," and which statute imposes the imperative duty upon "all persons clothed with power of appointment to make such transfer effective." There is no question in the present case of there being some position under the present county clerk very similar to the position from which the relator was removed and which he is fitted to fill. In fact, one of the new appointees of the present county clerk is performing the same duties as "custodian of records" which were formerly performed by the appellant. This is not a case where there is no similar position which the incumbent of the abolished position is properly fitted to fill, nor is it a case where he could not have been appointed without the displacement of some other person.

I think, therefore, that notwithstanding the position of the appellant was abolished by statute, under the provisions of the Civil Service Law above referred to he has a right to be continued in service under the present county clerk in such position as manifestly exists which he is capable of filling.

---

(95 Misc. Rep. 629)

### FAJEN et al. v. HUDSON TRANSP. CO.

(Supreme Court, Appellate Term, First Department. June 29, 1916.)

PAYMENT ⬅82(1)—RECOVERY BACK.

 Plaintiffs cashed a check payable to defendants at the request of defendants' agent, after it was indorsed by him. Plaintiffs subsequently deposited the check in their bank, which in due course collected the amount from defendants' bank. Upon receiving the check, defendants made affidavit that the agent was not authorized to cash or indorse the check, and requested repayment, which was made in due course by plaintiffs. *Held* that, in an action to recover the money repaid, a judgment for the plaintiffs will be reversed.

 [Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 254, 258, 259, 261, 265; Dec. Dig. ⬅82(1).]

 Bijur, J., dissenting.

Appeal from City Court of New York.

Action by Herman H. Fajen and another against the Hudson Transportation Company. From a judgment for plaintiff, and from an or-

der denying a motion for a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

Kilroe & Swarts, of New York City (Louis E. Swarts, of New York City, of counsel), for appellant.

Shiland & Hedges, of New York City (Arleigh Pelham, of New York City, and Wm. E. Shrewsbury, of Brooklyn, of counsel), for respondents.

PHILBIN, J.   Appeal is taken from a judgment of the City Court of the City of New York, entered upon a verdict by a jury in favor of the plaintiffs for the sum of $485.51, damages and costs, and from an order denying the defendant's motion to set aside the verdict and for a new trial.

In the year 1913 one William H. Nottage was in the employ of the defendant as master of a barge owned by it and known as John D. Paige. Nottage received from the Barker Bond Lumber Company a check bearing date October 10, 1913, for $297.74, in payment of freight due on a cargo carried by the barge. The check was drawn on the National Produce Exchange Bank and was made to the order of "Barge John D. Paige and owners." It was indorsed by Nottage, but there was added to the indorsement: "William H. Nottage, Master." The plaintiffs cashed the check by paying the amount thereof to Nottage at his request. Thereafter the check was deposited by plaintiffs to their credit in the Corn Exchange Bank, which later, in due course, collected the amount from the National Produce Exchange Bank, where the drawer, Barker Bond Lumber Company, had an account. The defendant, on or about January 6, 1914, procured the cancelled check and submitted it, together with an affidavit, to the National Produce Exchange Bank, and requested payment of the amount of the check. The affidavit was made by the vice president and treasurer of the defendant, and set forth, that Nottage was never authorized to cash or indorse the said check or any negotiable paper payable to the barge John D. Paige and owners on behalf of the Hudson Transportation Company and that he had no authority to do so. Thereupon that bank delivered the check and affidavit to the Corn Exchange Bank, and upon the latter presenting those papers to the plaintiffs they repaid the amount of the check to the Corn Exchange Bank and later, through the National Produce Exchange Bank, the money was paid to the defendant.

The plaintiffs conducted a liquor saloon, and never had had any business transactions with the defendant or Nottage, except that they had cashed similar checks for the latter. They knew Nottage only as an occasional patron of their establishment, and did not know by whom he was employed. Plaintiffs did not know who were the owners of the barge John D. Paige. They never had any communication with defendant prior to the payment of the money by them to Nottage.

The plaintiffs proceeded on the theory of an action for money had and received arising out of a mistake of fact. It is claimed by the

plaintiffs that the alleged mistake occurred when they paid back to the Corn Exchange Bank the money paid to Nottage on the check. It is said that plaintiffs were caused to make the mistake by the averments in the foregoing affidavit as to Nottage's absence of authority; the averments being contrary to the fact. It is admitted by plaintiffs that, if the statements in the affidavit were true, they made no mistake in refunding the money. The absence of any allegation of fraud committed by defendant leads to the inference that by mistake plaintiffs meant a mutual mistake of fact. The circumstances, however, preclude acceptance of a suggestion that defendant made an incorrect statement through mere mistake, as defendant was in a position to know whether Nottage had received authority from it. The theory of a mistake cannot be sustained, and therefore, if the plaintiffs were entitled to recover, it must be on the ground that they were wrongfully induced to part with their money because of untrue representations made by defendant. It is necessary in any event to ascertain just what the relations of Nottage and defendant were, in order to determine whether the former had no right, as claimed by the defendant, to indorse and cash the checks.

As master of the barge Nottage conducted voyages from Norfolk, Va., defendant's place of business, to New York City and other ports. He employed a crew and also men to discharge the cargo that was usually carried. He likewise collected the freight charges. In short, he conducted all the business of the defendant in each port in relation to the cargo which the barge brought. Nottage, when examined on behalf of the plaintiffs, testified that he would make remittances from time to time for the freight collected, less the expenses incurred. Plaintiffs conceded on the trial that Nottage was never told by defendant that he could indorse or cash checks. About five months before the occasion in question the defendant wrote him a letter, in which the following appeared:

"You will please draw as much freight as you can and send us at as early a date as possible. Have all checks made payable to the Hudson Transportation Company."

It is a fair inference that by freight was meant the money due therefor. It was shown that he had at times received and forwarded checks for freight to the defendant. He testified that the Barker Bond Lumber Company, the maker of the check in question, always paid for freight by check, and that at least on one occasion the check was not made to the order of the defendant, but was drawn to pay stevedores on defendant's account. It does not appear that, if such was the custom, it was known to the defendant. Nottage did business with a concern known as the Cahill Towing Line, which towed the barge from time to time, when necessary. The manager of the company stated that he had cashed checks for Nottage and had drawn checks for a part thereof to the order of the defendant. It further appeared that the stevedores' expenses were paid by Nottage by orders on the Barker Bond Lumber Company. This was done pursuant to directions of the defendant's vice president, who also told Nottage that, if he wanted money, the company would send it to him, and that all checks should be made payable to the defendant. Defendant likewise in-

structed Nottage not to forward money through Cahill, but to send the check received itself to the defendant. It accordingly appears that it was not necessary in the course of business that Nottage should cash checks received for defendant in order to pay the required expenses, and therefore there was nothing that would justify the finding that the nature of his employment was one from which an inference of such a right could be correctly drawn. In other words, the record is barren of any proof that the defendant ever knew or had reason to believe that Nottage indorsed or cashed a check before he did so as to the one in question. It is true that he had before induced plaintiffs to cash checks in all respects similar, except as to the amounts and dates; but there is nothing upon which knowledge of the transactions by the defendant could be predicated. It will therefore be seen that the only ground upon which it could be properly insisted that he had authority is that the character of his agency conferred it upon him, even though his employer, the defendant, did not know he was exercising it.

In taking up this point for consideration, the peculiar circumstances should not be overlooked. The attitude taken by the courts in cases where a dishonest agent has misappropriated the proceeds of a check, and the employer has not been allowed to evade responsibility and deny the agent's authority, is not applicable. The counsel for the plaintiffs correctly says that the test is to be applied as of the time when the plaintiffs refunded the money for which they are now suing, and not the time they cashed the check for Nottage. It is therefore, in the instant case, the act of the principal in making the alleged false statement upon which the liability is placed, and not the act of the agent proceeding under ostensible authority. It was the alleged wrongful act of the defendant that caused the plaintiffs to part with their money, and not the wrong originally done by Nottage.

For these reasons, the line of cases that have held the employer responsible for the acts of a dishonest servant is not pertinent. The power to collect a debt does not involve authority to indorse or cash checks given in payment of it, and, as appears from what has been said, Nottage had no other power. The fact that he had been given discretion to expend money for labor and other incidental things in the business did not give him the right to procure the necessary money by signing or indorsing checks or other negotiable paper. It has been shown that even as to that he was furnished with moneys by customers and the defendant itself. It must be held that the statements made in the affidavit that Nottage had no authority to indorse checks were founded on fact, and that no false representation was made. The plaintiffs, under these circumstances having willingly and without any improper inducement paid the money, are not entitled to recover.

Judgment and order reversed, with costs, and complaint dismissed, with costs.

GUY, J., concurs in result.

BIJUR, J. (dissenting). Plaintiffs sue for money had and received, the cause of action arising out of the following circumstances: De-

fendant owned the barge John D. Paige, of which one Nottage was master. It arrived in New York October 10, 1913, with a cargo for the Barker Bond Lumber Company. The latter drew its check on the New York Produce Exchange Bank for $297.74 in part payment of the freight, to the order of the barge John D. Paige and owners. Nottage took the check to plaintiffs, who are otherwise strangers to the entire transaction, indorsed it, "Barge John D. Paige and Owners, William H. Nottage, Master," and thereupon plaintiffs cashed the check, giving the cash to Nottage. They then deposited the check in their own bank, the Corn Exchange Bank. In January, 1914, defendant having in some way, which is not explained, obtained possession of the check, presented it to the Produce Exchange Bank (which it will be remembered was the depositary of the drawer), together with an affidavit subscribed by one Hudson, vice president of defendant, in which affidavit occurs the following sentence:

"That the Hudson Transportation Company never authorized the said William H. Nottage to cash the said check, or to indorse said check or any negotiable paper payable to the barge John D. Paige and owners on behalf of the Hudson Transportation Company."

The Produce Exchange Bank presented the affidavit and check to the Corn Exchange Bank, which in turn presented it to its customer, the plaintiffs, who, relying on the statement in the affidavit, refunded the amount to the Corn Exchange Bank, which in turn reimbursed the Produce Exchange Bank. The complaint, so far as material, alleges these facts, together with the statement:

"That the said William H. Nottage was at that time authorized by the defendant to indorse the said checks and to receive the proceeds thereof."

On the trial the actual facts were not seriously disputed. Plaintiff conceded that Nottage has not been expressly authorized to indorse checks drawn to the order of defendant. The actual controversy as litigated was whether he had been impliedly authorized to indorse. Much confusion seems to have arisen, both upon the trial and upon this appeal, through a failure to define the cause of action, and through plaintiffs' counsel's evident desire to employ a euphemism in his characterization of the defendant's course of conduct in the premises. He invariably refers to the cause of action which he is pursuing as for money had and received arising out of a "mistake" of fact. It is quite clear that plaintiffs do not intend to impute to defendant a willful and deliberate intent to defraud; but it is difficult to interpret the concurrent allegations in the complaint that defendant's vice president swore to the statement that defendant never authorized Nottage to indorse any negotiable paper payable to said barge or to the defendant, and that Nottage was at that time authorized by the defendant to indorse said check and receive the proceeds thereof, except as a charge of misrepresentation. It is true that there is no allegation in the complaint that the defendant knew at the time the misrepresentation was made that it was false, nor that it was made with intent to deceive the plaintiffs; but no objection on this ground was made to the complaint at any stage of the proceedings. The proof that the defendant

knew, or as a reasonable person should have known, that the statement was false, was, as I shall show, not only admitted without objection, but a large part of it was furnished by the testimony on behalf of defendant itself; and the latter fact is one which necessarily follows from the proofs adduced, also.

The only doubt which I have had about the right of plaintiffs to recover is in respect to the question whether the allegation in defendant's affidavit was a statement of fact in such sense as to make it actionable. While this point also has not been treated, either at the trial or in the briefs, it seems to me that under the circumstances the statement was, and was intended to be, the statement of a fact (People v. Mingey, 190 N. Y. 61, 64, 66, 82 N. E. 728; Sweet v. Tuttle, 14 N. Y. 465; Knapp v. Smith, 27 N. Y. 277); and if, as I shall assume, in harmony with the tone in which the case was tried, that the defendant did not willfully intend to deceive, it is manifest from the testimony that the statement was recklessly made, without due regard to the facts in possession of the defendant. Here again confusion was caused by the failure of both parties to preserve the distinction between express authority and implied authority on the one hand, and the doctrine of estoppel on the other. The learned judge below correctly charged that authority conferred by implication is as much actual authority as authority expressly conferred. That a plaintiff frequently can hold a principal by virtue of the alleged authority of an agent, where the principal has held the agent out as authorized to do the particular act at issue, depends upon the rule of evidence known as estoppel, whereunder the principal is not permitted to deny the authority—although it does not exist—because he has by his words or conduct led others to believe that it did exist. With the principle of estoppel this case is not concerned in any way.

On the other hand, there is abundant evidence that the defendant permitted and authorized Nottage to conduct the voyages of the barge in his own way, to deliver the cargo as he might think best, to employ and pay on their responsibility such help as might be necessary, to similarly defray all the appropriate charges and expenses, and to collect the freight and to pay these charges and expenses therefrom, furnishing him no other funds with which to do it.

The jury was well warranted in finding that for the purposes of conducting the voyages of this barge, and for delivering the cargo and collecting the receipts, Nottage was the general agent of the defendant, with full authority in the premises, and this conclusion of implied authority was quite justified, notwithstanding the only item in the proof which seems to throw any doubt on it, and which consisted of a letter of May 22, 1913, relating to one voyage anterior to the one which resulted in the transactions involved in this suit. In that letter the defendant, writing to Nottage, said:

"You will please draw as much freight as you can, and send us at as early a date as possible. Have all checks made payable to the Hudson Transportation Company."

This last sentence strikes me as quite inconclusive. It was at best a mere direction regarding the defendant's convenience. But, what-

ever it may have been intended to be, it was entirely superseded by the defendant's course of conduct thereafter, as testified to. It is true that Hudson testified that he did not know that Nottage was indorsing checks; but he also testified in substance that the defendant left the winding-up of the results of the voyages entirely to Nottage, and received the net proceeds from him without any inquiry as to how he had defrayed expenses, or any other detail. Nottage denied that he had ever been instructed not to indorse checks.

It is, as I have said, quite manifest on this record that there was ample evidence on which the jury could find that Nottage was authorized to collect and disburse the proceeds of the voyages, and this necessarily included the right to indorse checks drawn to the order of defendant in payment of the freights earned on these voyages. Burstein v. Sullivan, 134 App. Div. 623, 119 N. Y. Supp. 317; Morrison v. Chapman, 155 App. Div. 509, 140 N. Y. Supp. 700.

There are some suggestions in the briefs concerning the possibility that plaintiffs, at the time they reimbursed the bank, were as fully cognizant as at the time of the trial of all the facts on which they relied to prove Nottage's implied authority, and that therefore they are not at liberty to avail of a mistake of fact. I have endeavored to point out that no question of "mistake" is involved, but at all events, regarding the action from any point of view, this particular objection was not raised at the trial in any form. Moreover, regarding the statement of defendant in its affidavit as a misrepresentation, it was not a representation as to a physical fact concerning which opportunity of knowledge was as open to the plaintiffs as to the defendant, but was one concerning the condition of the relations between defendant and its own servant, and I know of no case which holds that plaintiffs were bound to search their recollection and analyze all their previous relations with Nottage before they should be entitled to rely upon the defendant's point-blank categorical statement.

Finally, even were I incorrect in this conclusion, it appears clearly in the record that a great part of the facts upon which the implied authority of Nottage is predicated was not and could not be in the ordinary course known to plaintiffs, for it consisted of transactions exclusively between Nottage and defendant, as testified to by defendant's vice president, and partly by Nottage, concerning the manner in which the proceeds of this and prior voyages had been dealt with and adjusted between them. The court below submitted to the jury as the single issue to be determined:

"If it is shown by the proof here—if the circumstances indicate a preponderating amount of proof on the claim that there was an implied agency, then you find for the plaintiff for the sum of $334.95."

Although, as I have indicated, there has been considerable confusion at the trial as to the correct name which should be applied to the cause of action, it is quite manifest from the record that what the parties actually litigated by mutual consent was the question whether Nottage had the implied authority of the defendant to indorse checks drawn as was the one involved in this action in the course of the business of the barge, and the jury was instructed that, if he had such

authority, the plaintiff should recover, and, if not, then their verdict should be for the defendant.

I am of opinion, therefore, that the recovery was warranted as one for money had and received, and paid by the plaintiffs to defendant, upon the defendant's false representation that Nottage was not authorized to indorse said check or other commercial paper on defendant's behalf; that such defects as existed in the complaint by failure to state certain elements of such a cause of action were not pointed out, or even hinted at, by the defendant at the trial, and that, in any event, the complaint may be deemed amended to conform with the proofs admitted either without objection, or, if over objection, then properly so admitted, as within the issues made by the complaint as actually framed.